## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS ROEHRMAN and ANNAMARIE STAPINSKI, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>MALWAREBYTES INC.,<br><br>              Defendant. | Case No. 24-1039<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Thomas Roehrman and Annamarie Stapinski bring this putative class action against Defendant Malwarebytes Inc. ("Malwarebytes" or "Defendant") and, based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences, and upon information and belief, including through investigation by Plaintiffs' counsel, as to all other matters, Plaintiffs allege as follows:

### NATURE OF THE ACTION

1.    This putative class action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), and Federal Communications Commission ("FCC") implementing regulations.

2.    Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)." *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023).

3.    To promote its goods and services, Defendant, and/or its agents acting as a common enterprise, knowingly and willfully engages in unsolicited text message marketing to consumers in violation of the TCPA.

4.      As alleged herein, Defendant repeatedly violated the TCPA by (1) sending automated text messages to Plaintiffs and the proposed Classes (the "Class," defined below) without prior express written consent; and (2) sending telemarketing text messages to Plaintiffs and the Class members while their phone numbers were registered on the national do-not-call ("DNC") registry without prior express written consent.

5.      Through this action, Plaintiffs seek an award of statutory damages to Plaintiffs and the Class, as well as injunctive relief ending Defendant's unlawful conduct that has resulted in intrusion into Plaintiffs' and the Class's peace and quiet in a realm that is private and personal to Plaintiffs and the Class members. *See Drazen*, 74 F.4th at 1345.

## JURISDICTION AND VENUE

6.      This Court has federal question subject matter jurisdiction over Plaintiffs' federal TCPA claims pursuant to 28 U.S.C. § 1331.

7.      This Court has personal jurisdiction over Defendant because Defendant purposefully directed its activities at Indiana residents and/or purposefully availed itself of the privilege of conducting business in Indiana by delivering its products into the stream of commerce with the expectation and/or awareness that they will be purchased by consumers in the state of Indiana, maintaining commercial websites through which Indiana consumers can purchase Defendant's products, and selling its products to Indiana consumers located in Indiana and, thus, Defendant has sufficient minimum contacts with the state of Indiana. Personal jurisdiction over Defendant also exists because Plaintiffs' injuries alleged herein directly arise out of and/or relate to Defendant's text message solicitations to Indiana consumers to sell its products to Indiana consumers in Indiana. Personal jurisdiction over Defendant also exists because this Court's exercise of personal jurisdiction over Defendant is reasonable, satisfies due process, and comports with traditional notions of fair play and substantial justice in that the

burden on Defendant in defending this action is minimal in light of modern technologies, Plaintiffs have a strong interest in having their rights heard and adjudicated in their chosen forum in their state of residence where they were harmed by Defendant, and the State of Indiana has a strong interest in regulating and efficiently resolving disputes between its residents and companies that cause harm to consumers in Indiana.

8.      In the alternative, this Court has personal jurisdiction over Defendant because third-parties who transmitted the subject text messages to Plaintiffs and consumers in Indiana were acting as Defendant's agents when transmitting such unlawful text messages on behalf of Defendant and, thus, the unlawful text messages of Defendant's agent are attributed to Defendant as the principal for the purpose of determining personal jurisdiction.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

10.      Plaintiff Thomas Roehrman is a natural person and, at all relevant times, was a resident of Hendricks County, Indiana.

11.      Plaintiff Annamarie Stapinski is a natural person and, at all relevant times, was a resident of Hendricks County, Indiana.

12.      Defendant Malwarebytes Inc. is a Delaware corporation with its principal place of business in Santa Clara, California.

13.      Non-Party Wewe Media Group Pte Ltd. ("Wewe Media") is a Singapore corporation that describes itself as a dynamic and globally recognized performance marketing network. Upon information and belief, and as alleged herein, Wewe Media is an affiliate marketer of Defendant Malwarebytes and, at all relevant times, acted as Defendant's agent in transmitting the text message solicitations at issue.

3

## FACTUAL ALLEGATIONS

14.     To promote the sale of its goods and services, Defendant engages in aggressive and intrusive telemarketing using automated technology to send text message solicitations to consumers, including Plaintiffs and the Class members, without their prior express written consent, including to consumers whose phone numbers are registered on the national DNC registry, all in violation of the TCPA.

**A.     Defendant's unlawful text message solicitations to Plaintiff Roehrman.**

15.     Commencing on or about September 16, 2023, Plaintiff Roehrman began being bombarded with automated text messages to his cellular telephone number ending 7298 (the "7298 Number"), as shown below.





16.     As shown in the above images, Plaintiff Roehrman continued to receive such text messages to his 7298 Number, including, without limitation, on September 26, 2023, September 28, 2023, October 1, 2023, October 5, 2023, and October 8, 2023.

17.     Plaintiff Roehrman is the main user of the 7298 Number.

18.     Plaintiff Roehrman registered his 7298 Number on the national DNC registry on April 04, 2008, and it has been so registered at all relevant times.

**B.      Defendant's unlawful text message solicitations to Plaintiff Stapinski.**

19.     Commencing on or about September 26, 2023, Plaintiff Stapinski began being bombarded with automated text messages to her cellular telephone number ending in 1463 (the "1463 Number"), as shown below.











20.     As shown in the above images, Plaintiff Stapinski continued to receive such text messages on her 1463 Number, including, without limitation, on September 27, 2023, September 28, 2023, and September 29, 2023.

21.     Plaintiff Stapinski is the main user of the 1463 Number.

22.     Plaintiff Stapinski registered the 1463 Number on the national DNC registry on May 1, 2005, and it has been so registered at all relevant times.

**C.    Defendant's telemarketing to Plaintiffs violated the TCPA.**

23.    The subject text messages introduce an advertisement and constitute "telephone solicitations" under the TCPA because they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

24.    Upon information and belief, the subject text messages to Plaintiffs were transmitted using an automated system that calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers.

25.    The following facts strongly suggest that such automated technology to send the text messages at issue: (1) Plaintiffs never provided Defendant or Wewe Media with their phone numbers; (2) Plaintiffs have no existing business relationship with Defendant or Wewe Media; and (3) Defendant's text messages to Plaintiffs were generic and obviously prewritten and, thus, were designed for *en masse* transmission.

26.    Plaintiffs never provided Defendant or Wewe Media with prior express written consent, or any consent, to receive text messages using automated technology.

27.    Plaintiffs never provided Defendant or Wewe Media with prior express written consent, or any consent, to receive telephone solicitation text message to their telephone numbers that were registered on the national DNC registry.

28.    Plaintiffs received the subject text messages while physically located in Indiana, and Defendant's violative conduct occurred in substantial part in Indiana.

29.    Defendant's telemarketing messages caused Plaintiffs and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and violation of their statutory privacy rights.

**D.    Defendant is directly liable for violations of the TCPA alleged herein.**

30.    Defendant initiated or directed and controlled the initiation of the subject text messages to Plaintiffs and the Class on its own behalf and for its own benefit, and Defendant is, therefore, directly liable for the violations of the TCPA alleged herein.

31.    As shown in the above images, each text message that Plaintiffs received contained a URL link that directs to an internet shop hosted on Malwarebytes' website domain, which offers Malwarebytes products and services for sale ("https://store.malwarebytes.com").

32.    Upon information and belief, Defendant sold goods and services to consumers, including in Indiana, via the URL link transmitted to consumers via Defendant's unlawful telemarketing campaign.

33.    Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages it sent to advertise/promote its goods and services. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

**E.    In the alternative, Defendant is vicariously liable for the violations of the TCPA alleged herein.**

34.    In the alternative, Plaintiffs allege upon information and belief that the subject text messages to Plaintiffs were sent by Non-party Wewe Media, as an agent of Defendant, and on behalf of Defendant and, for Defendant's benefit and, thus, Defendant is vicariously liable for Wewe Media's violations of the TCPA.

35.    Both the Seventh Circuit and the FCC recognize that "a defendant 'may be liable for TCPA violations by its representatives under a broad range of agency principles, under the federal common law of agency, including not only formal agency, but also principles of apparent

authority and ratification"). *Bilek v. Fed. Ins. Co*., 8 F.4th 581, 587 (7th Cir. 2021) (quoting *Dish*

*Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (F.C.C. May 9, 2013)) (cleaned up).

36.     The FCC has explained that "allowing the seller to avoid potential liability by

outsourcing its telemarketing activities to unsupervised third parties would leave consumers in

many cases without an effective remedy for telemarketing intrusions." *In re DISH Network*, 28

FCC, at 6588. "This would particularly be so if the telemarketers were judgment proof,

unidentifiable, or located outside the United States, as is often the case." *Id.* "Even where third-

party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the

telemarketer that physically places the call would make enforcement in many cases substantially

more expensive and less efficient, since consumers (or law enforcement agencies) would be

required to sue each marketer separately in order to obtain effective relief." *Id.*

37.     Non-Party Wewe Media is an affiliate marketer based in Singapore.

38.     Affiliate marketing is a marketing arrangement in which affiliates receive a

commission for each visit, signup, or sale they generate for a merchant. This arrangement allows

businesses to outsource part of the sales process.

39.     Defendant's website solicits applications from new "Affiliate Partners," offering

them to "Become an Affiliate Partner" and promising "high conversion rates," "up to 30%

commission for each sale," "receive commission 30 days within point-of-sale," "access to

affiliate marketing promos," "access to affiliate e-manager," "45-day referral period," and

"Malwarebytes handles product billing and support[.]"[1]

40.     Upon information and belief, Defendant maintains a contractual relationship with

Wewe Media pursuant to which Wewe Media engages in affiliate marketing of Defendant's

goods and services on behalf of Defendant, under Defendant's control, and for the benefit of

---

[1] *Available at* https://www.malwarebytes.com/affiliates (last visited June 4, 2024).

Defendant by transmitting unsolicited telemarketing text messages in order to promote the sale of Defendant's goods or services in exchange for a commission on each sale.

41.     Indeed, as shown in the above images of the subject text messages, the numerous text messages that Plaintiffs received each contain a URL link that directs to an online shop hosted on Defendant Malwarebytes' website domain, and that link includes an explicit reference to Wewe Media as the affiliate marketer that is entitled to receive a commission on any purchase of Defendant's goods or services that is completed through the link that was sent to Plaintiffs via the subject text messages ("…/purl-premium-**_aff-wewemedia_**?x-clickref=1100lxPMigUp") (emphasis added).

42.     At all relevant times, Wewe Media acted with actual authority as Defendant Malwarebytes' agent in sending the text messages at issue, Defendant controlled or had a right to control Wewe Media's actions, and Wewe Media's conduct fell within the scope of the agency and, thus, Defendant is vicariously liable for Wewe Media's violations of the TCPA.

43.     At all relevant times, Wewe Media acted with apparent authority from Defendant because Defendant, as the principal, wrote or otherwise acted toward Plaintiffs and the Class such that they would reasonably believe the principal consented to the agent's actions. Specifically, upon information and belief, Defendant granted Wewe Media a license to use Defendant's brand and intellectual property assets in order to market Defendant's products to Plaintiffs and the Class such that they reasonably believed that Defendant consented to Wewe Media's actions.

44.     At all relevant times, Defendant ratified Wewe Media's violations of the TCPA alleged herein because Defendant manifested assent and/or engaged in conduct that would reasonably imply consent, in that it contracted with Wewe Media to engage in affiliate marketing

to promote the sale of its goods and services in exchange for a commission, and it knowingly accepted the benefits of Wewe Media's actions in that it received income from sales of its products that were completed through Wewe Media's unlawful telemarketing in violation of the TCPA.

45.     Thus, if Defendant is not directly liable for the violations of the TCPA asserted herein (although it is), Plaintiffs plead in the alternative that Defendant is vicariously liable for the violations of the TCPA committed by its agent, Non-Party Wewe Media, on Defendant's behalf and for Defendant's benefit.

46.     Upon information and belief, Wewe Media maintains and/or has access to outbound transmission reports for all text messages it sent to advertise/promote Defendant's goods and services. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

## CLASS ALLEGATIONS

47.     Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

> **The "No Consent" Class: All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) were sent a text message, (2) by or on behalf of Defendant, (3) to their cellular telephone number, (4) using the same equipment or type of equipment used to message Plaintiff, (5) and who did not give prior express written consent to receive such messages.**

> **The "DNC Registry" Class: All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) were sent two or more text messages in any 12-month period (2) by or on behalf of Defendant (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.**

48.     The proposed Classes defined above are collectively referred to as the "Classes" or, at times, the "Class."

49.     Plaintiffs reserve the right to expand or narrow the definitions of each Class following discovery.

50.     Excluded from the Class is Defendant and its employees and agents.

51.     **_Numerosity_.** The members of the Class are so numerous that individual joinder is impracticable. Plaintiffs cannot know the exact number of Class members affected by Defendant's conduct, but based on the general nature of telemarketing campaigns, Plaintiffs believe, and therefore allege upon information and belief, that each Class includes, at a minimum, 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members are unknown at this time but can be ascertained through discovery, and identification of the Class members is a matter capable of ministerial determination from Defendant's records.

52.     **_Common questions of law and fact predominate._** There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a.   Whether Defendant sent text messages to Plaintiffs and the Class using an automated telephone dialing system within the meaning of the TCPA;

b.   Whether Defendant sent text messages to Plaintiffs and the Class while their telephone numbers were registered on the national DNC registry;

c.   Whether Defendant's text messages constitute "telephone solicitations" under the TCPA;

d.  Whether Defendant can meet its burden of showing that it had express written consent to send text messages to Plaintiffs and the Class;

e.  Whether Defendant is liable to Plaintiffs and the Class for statutory damages, and the amount of such damages; and

f.  Whether Defendant should be enjoined from engaging in such conduct in the future.

53.  **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class because they are based on the same factual and legal theories, Plaintiffs and the Class members were harmed by Defendant in the same way, and Plaintiffs are not subject to any unique defenses.

54.  **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action. Further, Plaintiffs have no interests that are antagonistic to those of the members of the Class.

55.  **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class are in the millions of dollars, the amount of individual damages to each member of the Class resulting from Defendant's wrongful conduct does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

### CAUSES OF ACTION

### COUNT 1

### Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the No Consent Class)

57.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs above as if fully set forth herein.

58.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

59.     It is a violation of the FCC regulations promulgated under and actionable through the TCPA to "initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service[.]" 47 C.F.R. § 64.1200(a)(1)(iii).

60.     Additionally, it is a violation of those FCC regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made[.]" 47 C.F.R. § 64.1200(a)(2).

61.     As alleged herein, Defendant—and/or agents and/or third parties directed and/or controlled by Defendant—transmitted text messages using an automatic telephone dialing system, including calls that introduce an advertisement or constitute telemarketing, to the cellular telephone numbers of Plaintiffs and members of the Class.

62.     Defendant did not have prior express consent to send automated text messages to Plaintiffs and the members of the Class.

63.     Defendant did not have prior express written consent to send automated text messages that introduce an advertisement or constitute telemarketing to Plaintiffs and the other members of the Class.

64.     Defendant, therefore, violated Section 227(b)(1)(A)(iii) and Sections 64.1200(a)(1)(iii) and (a)(2), promulgated thereunder.

65.     As a result of Defendant's violations of the TCPA, Plaintiffs and the other members of the Class were harmed.

66.     Plaintiffs and the members of the Class are entitled to an injunction against Defendant's conduct. § 227(b)(3)(A).

67.     Under the TCPA, Plaintiffs and the Class are entitled to an award of statutory damages of $500.00 for each text messages that violates the TCPA. § 227(b)(3)(B).

68.     Because Defendant knew that it did not have prior express written consent to send the subject text messages, and Defendant knew or should have known that it was using an automatic telephone dialing system, Defendant's violations of the TCPA were willful or knowing.

69. Under the TCPA, Plaintiffs and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. § 227(b)(3)(C).

## COUNT 2

### Violation of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiffs and the DNC Registry Class)

70.     Plaintiffs re-allege and incorporate by reference the allegations in the paragraphs above, except for the allegations in the preceding Count, as if fully set forth herein.

71.     The TCPA establishes a national DNC registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

72.     The FCC's implementing regulation under the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

73.     A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which is transmitted to any person," but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." § 64.1200(f)(15).

74.     Recently, the FCC "codif[ied] that the National DNC Registry's protections apply to text messages." *In re Targeting and Eliminating Unlawful Text Messages*, 89 FR 5177.

75.     A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]," which includes Section 64.1200(c). § 227(c).

76. Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiffs and the members of the TCPA DNC Registry Class while their respective telephone numbers were registered on the National DNC Registry.

77. As a result of Defendant's violations of the TCPA, Plaintiffs and the other members of the Class were harmed.

78. Plaintiffs and the members of the Class are entitled to an injunction against Defendant's conduct. *See* § 227(c)(5)(A).

79. Plaintiffs and the Class are entitled to an award of statutory damages of $500.00 for each text messages that violates the TCPA. *See* § 227(c)(5)(B).

80. Because Defendant knew or should have known that it was sending telemarketing text messages to numbers on the national DNC registry without consent, Defendant's violations of the TCPA were willful or knowing.

81. Plaintiffs and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. *See* § 227(c)(5)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, pray for the following relief:

A. An Order certifying the Classes, appointing Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

B. An Order declaring that Defendant's actions alleged herein violate the TCPA;

C. An award to Plaintiffs and each member of the Class of statutory damages of $500 for each text message that violates the TCPA, and an award of $1,500 for each violation found to be knowing or willful;

D.  An award to Plaintiffs and the Class of attorneys' fees and costs of this action;

E.  An injunction requiring Defendant to stop sending text messages to Plaintiffs

and the Class without prior express written consent; and

F.  Such further and other relief as the Court deems necessary.

### JURY TRIAL DEMAND

Plaintiffs requests a trial by jury on all issues so triable.

Dated: June 19, 2024                                Respectfully submitted,


*/s/ Eric C. Bohnet*
**Eric C. Bohnet, Attorney at Law**
6617 Southern Cross Dr.
Indianapolis, IN 46237
317-750-8503
ebohnet@gmail.com

**GOLD LAW, PA**
Chris Gold
Florida Bar No. 088733
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 561-789-4413
chris@chrisgoldlaw.com

*Counsel for Plaintiffs and the Proposed
Classes*